## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| N.H., et al., | ) | CASE NO.  5:21-CV-1034 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET M. BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE CARMEN E. |
| | ) | HENDERSON |
| DYLAN SOISSON, et al., | ) | |
| | ) | **DEFENDANT DYLAN SOISSON'S** |
| Defendants | ) | **AMENDED  MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |

Now comes Defendant Dylan Soisson who, pursuant to Fed. R. Civ. Proc. 56(c), hereby moves the Court for summary judgment in his favor.  Even construing the facts most favorably to Plaintiffs, Defendant Soisson is entitled to judgment as a matter of law.  A Memorandum in Support is attached hereto and incorporated herein by reference.

Respectfully submitted:

*John D. Latchney*
John D. Latchney (0046539)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333
DID:  (330) 670-7602
Cell:  (440) 213-2016
Fax:  (330) 670-7458
Email: jlatchney@hcplaw.net

*Attorney for Defendants Village of*
*Lakemore and Dylan Soisson*

\#

## **TABLE OF CONTENTS**

I. Introduction ...........................................................................................................................1

II.  Statement of Allegations/Facts.......................................................................................1

III.  Law and Argument .....................................................................................................2

      **A.**     **Qualified immunity generally** …………………………………………………2

      **B.**     **When events in a case "are recorded on video, the facts are viewed in the video's light, not in a light favorable to plaintiff** …………5

      **C.**     **Officer Soisson is entitled to judgment as a matter of law on the Fourth Amendment excessive force claim set forth in Count** I…………..6

      **D.**     **Officer Soisson is entitled to judgment as a matter of law regarding Count II—the Fourth Amendment unlawful seizure claim**………………12

      **E.**     **Officer Soisson is entitled to judgment as a matter of law regarding Count III—the Fourteenth Amendment Equal Protection claim**……..……15

      **F.**     **To the extent Plaintiff Tamika attempts to assert a loss of consortium claim predicated upon her federal claims, Count VII should be dismissed with prejudice**………………………………………………………16

      **G.**     **The Court should decline to exercise supplemental jurisdiction over the remaining state law claims once the federal claims have been dismissed**…………………………………………………………17

IV.  Conclusion……………………………………………………………………..17

i

#

# TABLE OF AUTHORITIES

**Cases**

*Ahlers v. Schebil*, 188 F.3d 365, 371–72 (6th Cir. 1999) ............................................................ 14

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ...................................................................... 3

*Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ............................................................ 13

*Bell v. City of Southfield, Michigan*, 37 F.4th 362 (6th Cir. 2022) ............................................ 6

*Bender v. Logan*, No. 1:12-CV-956, 2014 WL 2515402, at *13 (S.D.Ohio June 3, 2014),
    *aff'd,* 608 F. App'x 356 (6th Cir. 2015) ............................................................................ 17

*Ciminillo v. Streicher,* 434 F.3d 461, 467 (6th Cir.2006) ........................................................ 6

*City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503, 202 L. Ed.2d 455 (2019) ...................... 4

*Claybrook v. Birchwell,* 274 F.3d 1098, 1103-04 (6th Cir. 2001) ............................................ 6

*Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997) ........................................................................ 3

*Cunningham v. Michigan Dep't of State Police*, 852 F. App'x 178, 180 (6th Cir. 2021) .............. 5

*Cunningham v. Shelby Cty., Tennessee*, 994 F.3d 761, 765 (6th Cir. 2021) ................................ 5

*Dickerson v. McClellan,* 101 F.3d 1151, 1161-62 (6th Cir. 1996) ............................................ 6

*Dieterlen v. Ky. Dep't. of Corr.*, No. 2:13-26-DLB, 2013 WL 3994835, at *2
    (E.D.Ky. Aug. 5, 2013) ..................................................................................................... 14

*District of Columbia v. Wesby,* 583 U.S., at ——, 138 S.Ct., at 581 [199 L.Ed.2d 453] .............. 5

*Dorsey v. Barber*, 517 F.3d 389, 400 (6th Cir. 2008)…………………………………….....2#

*Emmerick v. City of Gatlinburg*, No. 08 C 305, 2010 WL 3861047, at *3–4
    (E.D.Tenn. Sept. 24, 2010) ................................................................................................. 11

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) ............................................ 3

#

*Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000) ........................................................ 15

*Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001) ........................................................... 11

*Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991) ................................................................... 3

*Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ............... 5, 6, 7

*Graves v. Mahoning Cnty.*, 821 F.3d 772, 776 (6th Cir. 2016) ................................................... 15

*Greathouse v. Couch*, 433 F. App'x 370, 372 (6th Cir. 2011) ....................................................... 6

*Hall v. Vill. of Gratis*, No. 3:07-cv-0351, 2008 WL 4758693, at *8 (S.D.Ohio Oct. 27, 2008) .. 13

*Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) ........................... 14

*Hogg v. Heath* (8th Dist.), 2015-Ohio-515, ¶23 ........................................................................... 5

*Hoskins v. Cumberland Cnty. Bd. of Educ.*, No. 2:13-cv-15, 2014 WL 7238621, at *7
    (M.D.Tenn. Dec. 17, 2014) ........................................................................................................ 7

*Humphrey v. Mabry*, 482 F.3d 840, 848-51 (6th Cir. 2007) ......................................................... 7

*Kalitta Air, LLC v. GSBD & Assocs.*, 591 F. App'x 338, 343 (6th Cir. 2014) ............................ 17

*Kinlin v. Kline*, 749 F.3d 573, 576 (6th Cir. 2014) ....................................................................... 5

*Kisela,* 584 U.S., at ——, 138 S.Ct., at 1152 [200 L.Ed.2d 449] ................................................. 4

*Kister v. Kelly*, No. 2:12-CV-00572, 2015 WL 1412407, at *13 (S.D.Ohio Mar. 26, 2015) ....... 14

*Klimik v. Kent Cty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004) ................................. 16

*Lesowitz v. Tittle*, No. 5:17-CV-2174, 2020 WL 4504889, at *8 (N.D.Ohio Aug. 5, 2020) ........ 13

*Lyons v. City of Xenia,* 417 F.3d 565, 575-576 (6th Cir.2005) ..................................................... 8

*Martin v. Maurer*, 581 Fed.Appx. 509, 512 (6th Cir. 2014) ....................................................... 14

#

*McNeil v. Richland Corr. Med.*, No. 1:19-CV-2699, 2020 WL 1066361, at *2
(N.D.Ohio Mar. 5, 2020) ................................................................................. 13

*Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ...................... 14

*Miller v. Davis*, 653 F. App'x 448, 456 (6th Cir. 2016) ................................................. 14

*Miller v. Sanilac Cnty.,* 606 F.3d 240, 248 (6th Cir.2010) ........................................... 14

*Nichols v. Vill. of Minerva, Ohio*, No. 5:14-CV-613, 2016 WL 1162080, at *3
(N.D.Ohio Mar. 23, 2016) ............................................................................... 16

*Oko v. Cleveland Div. of Police* (8th Dist.), 2021-Ohio-2931, ¶26 ................................... 5

*Patel v. Lanier County Georgia*, 969 F.3d 1173 (11th Cir. 2020) .................................... 11

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 800, 818 (2009) ...................................... 2

*Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007) ..................................... 14

*Pigram ex rel. Pigram v. Chaudoin,* 199 Fed.Appx. 509 (6th Cir. 2006) ............................... 8

*Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir. 1995) .............................................. 4

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ................................................ 13

*S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956 (6th Cir. 2014) .................... 15

*S.L. v. Pierce Twp. Bd. of Trustees*, No. 1:07-CV-986, 2013 WL 2156265, at *5
(S.D.Ohio May 17, 2013), aff'd sub nom ............................................................... 14

*Saal v. City of Wooster*, No. 5:18-CV-2744, 2020 WL 836498, at *4
(N.D.Ohio Feb. 20, 2020) ................................................................................ 13

*Scott v. Harris*, 550 U.S. 372, 381 (2007) .......................................................... 5

*Siegert v. Gilley*, 500 U.S. 226 (1991) ............................................................. 3

*Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ............................................... 13

#

*Swope v. Dubos*, No. 4:15 CV 970, 2015 WL 6460047, at *2 (N.D.Ohio Oct. 22, 2015) ............ 6

*Synek v. Brimfield Twp.*, No. 5:11-cv-0774, 2012 WL 4483806, at *8
 (N.D.Ohio Sept. 27, 2012) ........................................................................................... 13

*Taylor v. Ross*, No. 1:21 CV 600, 2021 WL 3930366, at *3 (N.D.Ohio Sept. 2, 2021) ........... 6, 7

*Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).............................. 6
#
*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997)……………………………………………………..3#

*U.S. v. Laville*, 480 F.3d 187, 192 (3rd Cir.2007) ...................................................................... 15

*United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996).......... 16

*United States v. Fachini,* 466 F.2d 53, 57 (6th Cir.1972) (collecting cases)................................ 15

*Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)...................................................... 15

*Wicks v. Lover's Lane Mkt* (9th Dist.), 2019-Ohio-2614, ¶10 .......................................................... 5

*Williams v. Crosby*, 43 F. Supp. 3d 794, 804 (N.D.Ohio 2014) .................................................... 8

*Wright v. Depew,* Civil Action No. 2:07–cv–166, 2010 WL 2594398 at *8
 (E.D.Tenn. June 22, 2010) ........................................................................................... 11

**Statutes**

28 U.S.C. § 1367(c) ...................................................................................................................... 17
28 U.S.C. § 1367(c)(3)................................................................................................................... 17

R.C. § 2151.87(B)(1) .................................................................................................................. 1, 13
R.C. § 2927.02(A)(8) ................................................................................................................... 1, 13
R.C. § 2935.26(A)........................................................................................................................ 13
R.C. § 2935.26(A)(2) ...................................................................................................................... 2
#

#

<u>**MEMORANDUM IN SUPPORT**</u>

I.      **Introduction**

Plaintiff N.H. has presented claim for excessive force in Count I, unlawful seizure in Count II, and a violation of equal protection in Count III.  Plaintiff Tamika has brought a loss of consortium claim in Count VII.  Each of these claims against Officer Soisson fail as a matter of law.

II.     **Statement of Allegations/Facts**

A.      **The Village of Lakemore Police Department**

Between July 2009 and June 2017, the Village of Lakemore did not have a Police Department.  Instead, the Village contracted with Springfield Township for police services.  Thus, for purposes of analyzing Plaintiffs' *Monell* claim, the relevant time-frame is the three-year period between June of 2017 and June 5, 2020.

B.      **General background facts**

The incident in question took place on June 5, 2020 at the Springfield Roller Rink in the Village of Lakemore, Ohio.  Underlying the encounter was an assault by a minor female upon another minor female.  Minor Plaintiff N.H. was the cousin of the minor female who had committed the assault.

While questioning her about her cousin's phone number, Village of Lakemore Police Officer Dylan Soisson observed a vape device in N.H.'s hand.  In Ohio, it's a minor misdemeanor crime for an individual under 21 years of age to possess a vape device.  R.C. § 2151.87(B)(1), which incorporates the definition set forth in R.C. § 2927.02(A)(8).

Having personally viewed the unlawful vape device (which contained vaping liquid), Officer Soisson had probable cause to temporarily detain N.H. to obtain information concerning

her identity.  Under Ohio law, a refusal to provide satisfactory evidence of one's identity can turn a minor misdemeanor offense into an arrestable offense.  R.C. § 2935.26(A)(2).

While Officer Soisson was still questioning her, N.H. attempted to leave.  Officer Soisson grabbed N.H.'s left arm and pushed her from a lobby or breezeway area outside the Roller Rink. Officer Soisson placed N.H. in handcuffs using a double-lock technique, which requires the officer to place a finger between the handcuffs and the person's wrist to ensure the handcuffs are not too tight.

Officer Soisson led N.H. to his police vehicle and she entered under her own power. Officer Soisson later contacted Plaintiff Tamika to have her pick up her daughter.  However, after initially indicating that she would do so, Tamika was unable to do so.

N.H. was supposed to have a friend stay overnight at her house.  The friend suggested that the mother come pick them up.  After talking with Tamika, she gave permission for the friend's mother to pick them up.  Eventually, the aunt of one of N.H.'s friends came to pick them up.  N.H. was detained for approximately 40 minutes.

## III.    Law and Argument

### A.     Qualified immunity generally.

"The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 800, 818 (2009).  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 400 (6th Cir. 2008).

Qualified immunity will ordinarily apply unless it is obvious that a reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of*

#

*Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). In determining whether an official is entitled to qualified immunity, the question is "Whether a reasonable [official] could have believed [their conduct] to be lawful in light of clearly established law and the information [the official] possessed. [The official's] subjective beliefs...are irrelevant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "In *Harlow v. Fitzgerald* … the Supreme Court **rejected the inquiry into the state of mind** of the person seeking immunity in favor of a wholly objective standard for determining whether or not qualified immunity exists. Under this test, an official would be immune 'if officers of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights." *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991).

The threshold inquiry in a qualified immunity case is whether a constitutional violation has occurred at all.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  In *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997), the Sixth Circuit, addressing the two-step qualified immunity analysis, stated:  The logical first step in deciding whether there is a colorable claim that a defendant has violated a "clearly established" constitutional right is to decide "whether the plaintiff has asserted a violation of a constitutional right at all."  *Id.* at 458.

The second step of the qualified immunity analysis, that is, objective legal reasonableness,[1] requires the courts to examine the asserted right at a "relatively high level of specificity."  *Id.*  The right must have been "clearly established" not just in abstract sense, but in

###########################################

[1] #    In determining whether an official is entitled to qualified immunity, the question is "Whether a reasonable [official] could have believed [their conduct] to be lawful in light of clearly established law and the information [the official] possessed.  [The official's] subjective beliefs...are irrelevant.  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "In *Harlow v. Fitzgerald* … the Supreme Court **rejected the inquiry into the state of mind** of the person seeking immunity in favor of a wholly objective standard for determining whether or not qualified immunity exists.  Under this test, an official would be immune 'if officers of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights."  *Gossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991).

#

3

#

a "particularized" sense. *Id.* at 458-59. Claims of immunity are thus to be analyzed "on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful…." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

As the U.S. Supreme Court observed in *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503, 202 L. Ed.2d 455 (2019), the clearly established right must be defined with specificity. "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality." *Kisela*, 584 U.S., at ——, 138 S.Ct., at 1152 [200 L.Ed.2d 449] (internal quotation marks omitted). That is particularly important in excessive force cases, as we have explained:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue....
>
> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*, 138 S.Ct., at 1153 (quotation altered).

"[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the

4

#

answer...." *District of Columbia v. Wesby,* 583 U.S., at ——, 138 S.Ct., at 581 [199 L.Ed.2d 453](internal quotation marks omitted).

   B.    **When events in a case "are recorded on video, the facts are viewed in the video's light, not in a light favorable to plaintiff.**

   As a threshold matter, both the United States Supreme Court and the Sixth Circuit Court of Appeals give great weight to body cam videos. When events in a case "are recorded on video, the facts are viewed in the video's light, not in a light favorable to plaintiff." *Cunningham v. Shelby Cty., Tennessee*, 994 F.3d 761, 765 (6th Cir. 2021), citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Kinlin v. Kline*, 749 F.3d 573, 576 (6th Cir. 2014)(accounts of incident that contradict video footage create no triable issue). "[W]hen a video of the arrest exists, we "view[ ] the facts in the light depicted by the videotape." *Cunningham v. Michigan Dep't of State Police*, 852 F. App'x 178, 180 (6th Cir. 2021).[2]

   Generally, the Fourth Amendment's prohibition against unreasonable seizures prohibits the use of excessive force against free citizens. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The test is one of objective reasonableness: "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. Courts assess "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9,

##########################################

[2]    The same is true under state law. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See, *e.g.*, *Oko v. Cleveland Div. of Police* (8th Dist.), 2021-Ohio-2931, ¶26, citing *Scott*, 550 U.S. at 380. "[V]ideo surveillance footage can be proper Civ.R. 56 evidence." *Wicks v. Lover's Lane Mkt* (9th Dist.), 2019-Ohio-2614, ¶10, citing *Hogg v. Heath* (8th Dist.), 2015-Ohio-515, ¶23.

#

105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)), among other case-specific factors. *See Ciminillo v. Streicher,* 434 F.3d 461, 467 (6th Cir.2006). In short, courts must ask whether the officer's use of force was objectively reasonable in light of the totality of the circumstances as they would have appeared to a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

The Sixth Circuit applies "a 'segmented approach' to excessive-force claims, in which [a court] 'carve[s] up' the events surrounding the challenged police action and evaluate[s] the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force." *Greathouse v. Couch*, 433 F. App'x 370, 372 (6th Cir. 2011), citing *Claybrook v. Birchwell,* 274 F.3d 1098, 1103-04 (6th Cir. 2001); see also *Bell v. City of Southfield, Michigan*, 37 F.4th 362 (6th Cir. 2022), citing *Dickerson v. McClellan,* 101 F.3d 1151, 1161-62 (6th Cir. 1996)(highlighting the importance of analyzing force in segments).

**C.    Officer Soisson is entitled to judgment as a matter of law on the Fourth Amendment excessive force claim set forth in Count** I.

   1.    *First use of force--Officer Soisson's grabbing N.H. and pushing her out the door was not excessive force.*

An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Taylor v. Ross*, No. 1:21 CV 600, 2021 WL 3930366, at *3 (N.D.Ohio Sept. 2, 2021).  "The power to arrest necessarily carries with it the power to use some force to make an arrest."  *Swope v. Dubos*, No. 4:15 CV 970, 2015 WL 6460047, at *2 (N.D.Ohio Oct. 22, 2015).

#

Plaintiffs allege that Officer Soisson "clearly used excessive force in violently grabbing N.H., from behind," and "pushing her out the door[.]"[3]  **Doc. 31-1, PageID#140**, Am. Compl. ¶46.  While the body cam reveals that Officer Soisson clearly pushed N.H. outside, the amount of force used to do so was *de minimis*.

With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).  The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances.  *Taylor v. Ross*, No. 1:21 CV 600, 2021 WL 3930366, at *3 (N.D.Ohio Sept. 2, 2021).

Officer Soisson's body cam [92865894], which captures N.H.'s attempt to walk away at the 23:56 mark, Officer Soisson telling her "let's go outside" at the 24:00 mark, and then the push outside between 24:00 and 24:15 mark (at which point she was handcuffed), the body cam establishes that N.H. did not fall or stumble, did not bump into anything or anyone, and remained in a standing position during the seizure.

The body cam video [92865894], shows at the 24:09 mark Officer Soisson initially grabs N.H.'s left wrist.  At the 24:10 mark, Officer Soisson uses his left hand to grab her left bicep, then quickly releases the left bicep while he uses his right arm to placed her arm behind her back. At the 24:11 mark, it shows Officer Soisson holding N.H.'s left wrist with his right hand. Officer Soisson did not use any straight arm lock technique in seizing and handcuffing N.H. Declaration of Police Chief Roy Smith; Declaration of Dylan Soisson.

##########################################

[3]     "Unlawful seizure and excessive force are distinct claims." *Hoskins v. Cumberland Cnty. Bd. of Educ.*, No. 2:13-cv-15, 2014 WL 7238621, at *7 (M.D. Tenn. Dec. 17, 2014) (citing *Humphrey v. Mabry*, 482 F.3d 840, 848-51 (6th Cir. 2007)).  Indeed, a seizure necessarily involves the use of some force, which may not be excessive in nature.

#

N.H. did not seek medical attention immediately after the incident; instead, she went home.  The next day was, as she put it, "just a regular day."  **Doc. 34-2, PageID# 243**, N.H. depo. at 22, l. 21-22.  N.H. recalled that she and her friend, J.S., who visited for the weekend, just stayed in the house and they were on Tik-Tok.  *Id*., **PageID# 244**, N.H. depo. at 23, l. 2-18.

       2.    *Second Use of Force--the claim that the handcuffs were "too tight" fails as both a matter of law and fact.*

The Sixth Circuit has cautioned that "[n]ot all allegations of tight handcuffing ... amount to excessive force. In order to reach a jury on this claim, the plaintiff **must allege some physical injury from the handcuffing**, and **must show that officers ignored plaintiff's complaints that the handcuffs were too tight**."  *Pigram ex rel. Pigram v. Chaudoin,* 199 Fed.Appx. 509 (6th Cir. 2006)*,* citing *Lyons v. City of Xenia,* 417 F.3d 565, 575-576 (6th Cir.2005)(emphasis added).  "In the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred. These [alleged] facts thus do not rise to the level of unconstitutionally excessive force." *Williams v. Crosby*, 43 F. Supp. 3d 794, 804 (N.D.Ohio 2014)(citing *Lyons*).

In the case *sub judice*, both elements of the claim are lacking.  First, N.H. admitted that she did not ever complain about a wrist injury, nor seek medical treatment for any physical injury from the handcuffing.  **Doc. 34-2, PageID# 248**, N.H. depo. at 27, l. 6-9; at **PageID# 247**, N.H. depo. at 26, l. 10-17.  Second, N.H. admitted at her deposition that she did not complain to Officer Soisson that the handcuffs were too tight.[4] **Doc. 34-2, PageID# 257**, N.H. depo. at 36, l.

###########################################

[4]     The latter is belied by the fact that the body cam video [92865894] shows Officer Soisson using the double-lock technique while the handcuffs were deployed, which is designed to prevent the handcuffs from being too tight because the officer inserts a finger to insure proper spacing.

#

2-12.  As such, Plaintiff N.H.'s Fourth Amendment excessive force claim cannot be predicated upon "too tight" handcuffs.

> 3. *Third Claimed Use of Force—the body cam video objectively N.H. was not thrown into the backseat of the police cruiser.*

Plaintiffs allege that N.H. was "thrown" into the backseat of the police cruiser. **Doc. 31-1, PageID# 140**, Am. Compl. ¶46.  However, Officer Soisson's body cam video [92865894] directly contradicts this assertion.  Indeed, from the 24:39 to the 24:43 mark, it shows N.H. being escorted to the police car.  Officer Soisson opens the door with his left hand at the 24:43-44 mark.  At the 24:47 mark, Officer Soisson guides her into the back seat area and lets her go about 1.5 seconds later.[5]   The video shows that N.H. sits down without any assistance or contact from Officer Soisson. At the 24:49 to 24:53 mark, it shows Officer Soisson telling N.H. to put her feet in the car and he shuts the door.  Plaintiffs assertion that Officer Soisson was "throwing her into the backseat" of the police cruiser is simply fictitious.

> 4. *The Fourth Alleged Use of Excessive Force—Turning up the Heat in the Vehicle and Refusing to Crack the Window isn't reflected on the body cam videos.*

Plaintiffs claim that Officer Soisson turned up the heat in the vehicle, refused to crack the window, and that N.H. had passed out.  However, the body cam videos simply don't support these assertions.

As a threshold matter, <u>before</u> N.H. was placed in Officer Soisson's cruiser, Officer Soisson's body cam video [92865894], at the 19:25 mark, shows Officer Soisson approaching his cruiser.  From the 19:27 until the 19:34 mark, it shows the front driver side window of Officer Soisson's cruiser <u>completely open</u>.  Between the 19:34 mark and the 22:25 mark, when

###############################################

[5]     Officer Hinerman's body cam video [5614299], shows part of the arrest [10:47-10:51], and placement of N.H. in Officer Soisson's vehicle [11:22-11:32].  From a different angle, it confirms that N.H. wasn't "thrown" into the backseat.

#

the young lady points out N.H. inside the roller rink, Officer Soisson never returned to the cruiser to close that front driver's side window.  From the 19:34 mark until the 29:53 mark when Officer Soisson shuts off the body cam, there's never any indication that Officer Soisson returned to his cruiser at all.  That includes the period from the 24:49 mark to the 29:53 mark that N.H. was inside the cruiser.

On Officer Hinerman's body cam video [5614299], at the 9:26 mark, it shows Officer Hinerman opening the door to release a white male, who had been in custody and was sitting in Officer Soisson's car[6], to his parents, until the 10:35 mark.  Three things are notable about Officer Hinerman's body cam video.

First, it shows the weather conditions that evening were cloudy and overcast.  There's no evidence of sun at this point in the evening.  Second, at no time does the white male who had been sitting in Officer Soisson's car complain about it having been too hot.  He only complains about his hands.  Third, at the 10:47 mark, just before N.H. was placed in Officer Soisson's cruiser, Officer Hinerman's body cam video [5614299], shows that he left the door open and returns to shut the door at the 11:17 mark.

Starting with Officer Soisson's body cam video [92865894], after N.H. is placed in the back seat of the cruiser and the door is shut, over the course of the next 4+ minutes (from the 24:53 mark to 29:07 mark), Officer Soisson is performing other duties.  Officer Barauskas body cam video [79073814], captures this activity from the 00:09 mark to 00:34 mark and then again at the 00:58 mark until the 2:05 mark.

################################################

[6]     Officer Soisson's body cam video [92865894], at the 00:01 mark, starts with this same white male being handcuffed by Officer Soisson and placed in the back of his cruiser.  Officer Soisson also opens the door at the 18:21 mark to tell the white male that he was receiving a ticket for walking in the road and court date will come in the mail.

#

Officer Barauskas body cam video [79073814], at the 2:05 mark, shows J.S. (N.H.'s friend who stayed the weekend with her], handing Officer Soisson her cell phone and representing that it's N.H.'s mother.  At the 2:21 mark until the 2:24 mark, Officer Soisson can be heard talking to N.H.'s mother within just a few minutes of N.H. being placed in his cruiser. *Id*. [79073814].

At the 29:08 mark, Officer Soisson briefly opens the door of his cruiser and tosses his ticket book onto the seat.  This event last 5 seconds until at the 29:13 mark, Officer Soisson closes the door.  There's nothing in that video that shows that he reached deeper into the car and turned on the heat.[7]

Nonetheless, assuming *arguendo* that Officer Soisson returned to his cruiser and turned on the heat, N.H. would have been in such an environment during an overcast cloudy evening with no sun for at most 35 minutes.

Detention in a hot car for periods of twenty, thirty, or even forty-five minutes does not violate the Constitution.  See *Emmerick v. City of Gatlinburg*, No. 08 C 305, 2010 WL 3861047, at *3–4 (E.D.Tenn. Sept. 24, 2010) (collecting cases)[8].

In *Patel v. Lanier County Georgia*, 969 F.3d 1173 (11th Cir. 2020), examined a "hot car" detention case.  The Eleventh Circuit affirmed the district court's decision to grant summary

##############################################

[7]     For no apparent reason, Officer Soisson would've had to close his window and turn on the heat at some point between 5 minute mark and the 40 minute mark when N.H. was released. Given that Officer Soisson would've had to get into the same hot car to drive it back to the station, it makes no sense.  Furthermore, there were three other juveniles who were placed in Officer Soisson's car and none complained about the car being too hot.

[8]     The Fifth Circuit, however, has found that a post-arrest detention for approximately one-half hour in an unventilated police vehicle in the sun did not violate the Fourth Amendment. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Wright v. Depew*, Civil Action No. 2:07–cv–166, 2010 WL 2594398 at *8 (E.D.Tenn. June 22, 2010)(placing the plaintiff in an unventilated vehicle for 35–45 minutes in hot weather did not violate a constitutional right.).

#

judgment—albeit on different grounds.  In Patel, the Eleventh Circuit held that the law was not clearly established that being in hot car for two hours in 85 degree heat was excessive force.  The Court distinguished the Sixth Circuit's decision in Burchett, where the suspect was in a hot car for three hours in 90 degree heat.

> Moreover, and in any event, even if *Burchett* or *Danley*'s citation of it—could clearly establish the law in general, it wouldn't clearly establish that Deputy Smith's particular conduct violated Patel's constitutional rights. The detention in Burchett was both (1) somewhat longer—three hours with no ventilation, as compared to two hours here, less than half of which was wholly unventilated—and (2) somewhat more severe—a 90 degree ambient temperature, as compared to 85 degrees.  310 F.3d 940.  Close, but not close enough—because all agree that confining a pretrial detainee in a hot vehicle for just a short time wouldn't be unreasonable, law-enforcement officials need some leeway in this area. Accordingly, we will not impute notice in a hot-car case unless the analogy to preexisting case law is clear.

Here, the evidence establishes that N.H. was in the cruiser for, at most 35 minutes, in the evening, where it was cloudy and the sun was not shining.  Applying *Emmons* and *Wesby*, Plaintiff N.H. cannot point to a specific decision where being in a hot police car for a short time constitutes the violation of a clearly established constitutional right.  As such, even construing the facts most favorably to Plaintiff N.H., Officer Soisson would be entitled to qualified immunity on the second prong of the analysis.

### D.    Officer Soisson is entitled to judgment as a matter of law regarding Count II—the Fourth Amendment unlawful seizure claim.

There is no genuine issue of material fact that Plaintiff N.H. was:  (1) a minor (then 13 years old)[9]; (2) in possession of a vape device[10]; and (3) that in Ohio, it's a minor misdemeanor

###################################################

[9]    **Doc. 31-1**, **PageID# 137**, Am. Compl. ¶8.

[10]    *Id.*, **PageID# 139**, Am. Compl. ¶27; **Doc. 34-2, PageID#s 232-233**, N.H. depo. at 11, l. 22 to 12, l. 3; at **PageID# 234**, N.H. depo. at 13, l. 13-17.  During her deposition, Plaintiff N.H. attempted to justify her possession of the vape as all the kids have them. **Doc. 34-2, PageID# 235-236**, N.H. depo. at 14, l. 18 to 15, l. 4.

#

crime for an individual under twenty-one (21) years of age to possess a vape device.  R.C. §

2151.87(B)(1), which incorporates the definition set forth in R.C. § 2927.02(A)(8).  Plaintiffs

acknowledge and admit that the offense occurred in the presence of Officer Soisson.[11]  Plaintiff

N.H. also admitted that she knew it was an offense to be in possession of the vape device.  **Doc.**

**34-2**, **PageID# 236**, N.H. depo. at 15, l. 9-18.

The U.S. Supreme Court has held that a full custodial arrest for a minor misdemeanor

punishable only by a fine does not violate the Fourth Amendment  *Atwater v. City of Lago Vista*,

532 U.S. 318, 354 (2001).  "If an officer has probable cause to believe that an individual has

committed even a very minor criminal offense in his presence, he may, without violating the

Fourth Amendment, arrest the offender[ ]").  *Lesowitz v. Tittle*, No. 5:17-CV-2174, 2020 WL

4504889, at *8 (N.D.Ohio Aug. 5, 2020)(Officer Tittle is entitled to summary judgment on

Lesowitz's false arrest claim.");  *Synek v. Brimfield Twp.*, No. 5:11-cv-0774, 2012 WL 4483806,

at *8 (N.D.Ohio Sept. 27, 2012);  *Hall v. Vill. of Gratis*, No. 3:07-cv-0351, 2008 WL 4758693, at

*8 (S.D. Ohio Oct. 27, 2008).

Even assuming *arguendo* that N.H.'s arrest violated state law, *i.e.* R.C. § 2935.26(A),

because none of the statutory exceptions for a minor misdemeanor arrest applied, a violation of

that state statute cannot serve as the basis for a federal constitutional claim.  "State law claims

are not cognizable under § 1983," *McNeil v. Richland Corr. Med.*, No. 1:19-CV-2699, 2020 WL

1066361, at *2 (N.D.Ohio Mar. 5, 2020), because "[i]t is well established that `a mere violation

of ... state law will not establish a proper claim under § 1983.'" *Saal v. City of Wooster*, No.

5:18-CV-2744, 2020 WL 836498, at *4 (N.D.Ohio Feb. 20, 2020), citing *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has

###################################################################################################

[11]    **Doc. 31-1**, **PageID# 139**, Am. Compl. ¶28.

13

#

long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."); *Dieterlen v. Ky. Dep't. of Corr.*, No. 2:13-26-DLB, 2013 WL 3994835, at \*2 (E.D.Ky. Aug. 5, 2013)("Violations of state law are not cognizable under 42 U.S.C. § 1983, which provides redress for denial of federally protected civil rights.").

Beyond that, a wrongful arrest claim will not lie under the Fourth Amendment because there was probable cause for the arrest.  Probable cause exists when "'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'"  *Kister v. Kelly*, No. 2:12-CV-00572, 2015 WL 1412407, at \*13 (S.D.Ohio Mar. 26, 2015), <u>citing</u> *Miller v. Sanilac Cnty.,* 606 F.3d 240, 248 (6th Cir.2010)(quoting *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)).  "[P]robable cause exists when the police have reasonably trustworthy information [that is] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense based on the facts and circumstances within [the police's] knowledge at the moment in question."  *Miller v. Davis*, 653 F. App'x 448, 456 (6th Cir. 2016), <u>citing</u> *Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007).  "Once probable cause is established ... the police have no constitutional duty to investigate further or to seek potentially exculpatory evidence."  *Martin v. Maurer*, 581 Fed.Appx. 509, 512 (6th Cir. 2014) (citing *Ahlers v. Schebil*, 188 F.3d 365, 371–72 (6th Cir. 1999)).

"The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *S.L. v. Pierce Twp. Bd. of Trustees*, No. 1:07-CV-986, 2013 WL 2156265, at \*5 (S.D.Ohio May 17, 2013), <u>aff'd sub nom.</u> *S.L. ex rel. K.L. v. Pierce Twp. Bd. of*

\#

*Trustees*, 771 F.3d 956 (6th Cir. 2014) <u>citing</u> *U.S. v. Laville,* 480 F.3d 187, 192 (3rd Cir.2007) ("We made it quite clear that the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness").   Even when the arrest is invalid, probable cause is "sufficient to justify arrest." *Graves v. Mahoning Cnty.*, 821 F.3d 772, 776 (6th Cir. 2016), *United States v. Fachini,* 466 F.2d 53, 57 (6th Cir.1972) (collecting cases).

> **E.      Officer Soisson is entitled to judgment as a matter of law regarding Count III—the Fourteenth Amendment Equal Protection claim.**

The Equal Protection Clause of the Fourteenth Amendment prohibits purposeful discrimination in the enforcement of laws. Selective enforcement of laws can lead to § 1983 liability if the plaintiff pleads purposeful discrimination. *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). The Sixth Circuit has established a three-part test for determining if race discrimination occurred as a result of selective enforcement of the law:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.  *Id*. at 319 (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)).  "With regard to the first element, 'it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted.'"

Where, as here, a plaintiff alleges that "the state treated [him] differently from others similarly situated and that there is no rational basis for such difference in treatment[,]" *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005), plaintiff, therefore, must not only prove that she was treated different from others similarly  situated; she must also prove that there was no rational basis for the alleged difference in treatment. *Id*. A plaintiff can prove the latter element in one of two ways: by (1) "'negativ[ing] every conceivable basis which might support' the

#

government action or ... [(2)] demonstrating that the alleged action was motivated by animus or ill-will." *Id*. at 711 (quoting *Klimik v. Kent Cty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004)).

However, "[t]here is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; 'the standard is a demanding one.'" *Nichols v. Vill. of Minerva, Ohio*, No. 5:14-CV-613, 2016 WL 1162080, at *3 (N.D.Ohio Mar. 23, 2016), <u>citing</u> *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)(quoting *United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)).

Plaintiff N.H. claims that Officer Soisson never attempted to arrest to detain or arrest white patrons.  Am. Compl. ¶57.  The problem with that assertion is that the very first person Officer Soisson detained and arrested that evening was a white male, who was cited for walking in the road (a rather minor offense).  Officer Soisson's body cam [92865894], at the 00:01 mark, starts with this same white male being handcuffed by Officer Soisson and placed in the back of his cruiser.  Officer Soisson also opens the door at the 18:21 mark to tell the white male that he was receiving a ticket for walking in the road and court date will come in the mail.  Unlike the white male, N.H. was never cited or charged with possession of the vape device.

As for the balance of the claim, there is no evidence of a similarly situated Caucasian person who presented the same or similar circumstances as Plaintiff N.H.  As such, the claim fails for this additional reason as well.

16

#

**F.     To the extent Plaintiff Tamika attempts to assert a loss of consortium claim predicated upon her federal claims, Count VII should be dismissed with prejudice.**

Pursuant to Fed. R. Civ. Proc. 10(c), which provides (in relevant part), that "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion," Defendant Soisson incorporates by reference the Village's law and argument set forth in its' Motion for Summary Judgment [**Doc. 32, Page ID#s 163-165**], as if fully rewritten herein.

**G.     The Court should decline to exercise supplemental jurisdiction over the remaining state law claims once the federal claims have been dismissed.**

Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim where: *** (3) the district court has dismissed all claims over which it has original jurisdiction[.]  "Because no federal claims remained, the court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3)(allowing a court to decline jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction")." *Kalitta Air, LLC v. GSBD & Assocs.*, 591 F. App'x 338, 343 (6th Cir. 2014). "This Court has dismissed the only federal claim alleged. The Court therefore declines to exercise supplemental jurisdiction over the balance of Plaintiffs' claims, and they are dismissed without prejudice." *Bender v. Logan*, No. 1:12-CV-956, 2014 WL 2515402, at *13 (S.D.Ohio June 3, 2014), *aff'd*, 608 F. App'x 356 (6th Cir. 2015).

**IV.    Conclusion**

Plaintiffs' three constitutional claims against Officer Soisson fail as a matter of law and he's otherwise entitled to qualified immunity.  Accordingly, Officer Soisson's Motion for Summary Judgment on Complaint Counts I through III should, and must, be granted, and the

#

remaining state law claims in Plaintiffs' Complaint against the Village dismissed without prejudice.

Respectfully submitted:

*John D. Latchney*

John D. Latchney (0046539)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333
DID:  (330) 670-7602
Cell:  (440) 213-2016
Fax:  (330) 670-7458
Email: jlatchney@hcplaw.net

*Attorney for Defendants Village of Lakemore and Dylan Soisson*

18

#